**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**SHANE K. ENSLIN**,
on behalf of himself and all
others similarly situated,

                     Plaintiff,          Civil Action No._____

      v.

**THE COCA-COLA COMPANY,
COCA-COLA REFRESHMENTS USA,
INC., COCA-COLA ENTERPRISES, INC.,
KEYSTONE COCA-COLA AND
BOTTLING AND DISTRIBUTION
CORPORATION, KEYSTONE COCA-
COLA BOTTLING CO., KEYSTONE
COCA-COLA BOTTLING COMPANY,
INC., KEYSTONE COCA-COLA
BOTTLING CORPORATION,
THOMAS WILLIAM ROGERS, III,
DOE DEFENDANTS 1-50, ABC
CORPORATIONS 1-50, and
XYZ PARTNERSHIPS AND
ASSOCIATIONS.**

                     Defendants.

**COMPLAINT -- CLASS ACTION**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

*Page*

Nature Of The Case ..................................................................................................1

Jurisdiction And Venue..............................................................................................4

The Parties ................................................................................................................5

  Plaintiff ................................................................................................................5

  Defendants ..........................................................................................................6

    *The Coke Defendants* .......................................................................................6

    *The Criminal Defendants* .................................................................................8

Factual Background ...................................................................................................9

Class Action Allegations..........................................................................................19

Numerosity...............................................................................................................19

Common Questions Of Law And Fact......................................................................19

Typicality .................................................................................................................23

Adequacy Of Representation ...................................................................................23

Superiority................................................................................................................23

Count I
Violations Of The Drivers Privacy Protection Act ....................................................24

Count II
Negligence ..............................................................................................................26

Count III
Negligent Misrepresentation/Fraud ........................................................................26

Count IV
Breach Of Contract .................................................................................................31

Count V
Breach Of Implied Contract.....................................................................................31

Count VI
Breach Of Covenant Of Good Faith And Fair Dealing ............................................32

Count VII
Unjust Enrichment ...................................................................................................................33

Count VIII
Bailment...................................................................................................................................35

Count IX
Conspiracy/Concert of Action .................................................................................................35

Prayer For Relief......................................................................................................................36

Jury Demand .............................................................................................................................38

Shane Enslin ("Plaintiff"), on his own behalf and on behalf, below-described of the Class, by and through his attorneys, alleges as follows:

## CLASS ACTION COMPLAINT

This case is brought by Plaintiff who had his personal identifying and financial information ("PII") accessed, stolen, and used without his authorization, and because of the negligence, breaches of statutory, common law and contractual duties, and other acts and omissions described herein on the part of the Defendants, he suffered actual harm and monetary damages.   Plaintiff brings this action on his own behalf, and on behalf of all others similarly situated, to obtain declaratory and injunctive relief, damages (including compensatory, statutory, exemplary and punitive damages), costs of suit, attorneys' fees and other appropriate relief. Plaintiff complains and alleges, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this case as a class action on behalf of himself and the more than 70,000 people who have had their personal identifying, motor vehicle, and financial information accessed without their authorization and used illegally as a result of the acts and failures to act of of the Defendants.  The case seeks to remedy the harmful effects of the breach of their privacy interests, failure to timely and reasonably notify Plaintiff and the Class of the breach in accordance with the laws of most states, including Pennsylvania, failure to abide by other laws that required their PII be secured, the misleading and deceptive notification, and, the insufficient remedy afforded provided by Defendants.

2.      Over a six-year period, from 2007 through 2013, approximately fifty-five (55) laptop computers were stolen from Coca-Cola Enterprises ("CCE"), the Coca-Cola Company's

1

("Coke") largest United States bottler, which Coke acquired in 2010.  Coke recovered certain of these laptops from the thieves during November and December of 2013.

3.      During the period from at least July 2007 through the present (hereinafter the "relevant time period"), the exact dates of which are unknown by the Plaintiff or any member of the Class at this time, the Defendants caused personal identifying, motor vehicle, and financial information about Plaintiff and the Class to be accessed, collected, downloaded, saved, distributed, transferred and used by various individuals and entities without knowledge or consent of Plaintiff and the Class.  The corporate Defendants then failed to timely and reasonably notify Plaintiff and the Class of such unauthorized access and breach of their privacy interests, which notice is explicitly required by the laws of Pennsylvania and forty-three (43) other states, the District of Columbia and Puerto Rico.  And, the notice that was finally sent months later was materially false and misleading as to the nature and scope of the breach (that was fully known by Defendants at the time).

4.      While the full extent of the PII stored on the laptop computers remains unknown at this time, the following categories of employee PII were identified by the Wall Street Journal as being including the data on the stolen computers:

       a.      Social Security Numbers;

       b.      Drivers license records; and

       c.      Other data collected and maintained by Coke and CCE's human resources departments.

5.      It is believed and therefore averred that the PII that was among the data on the stolen computers also included :

      a.     the names of Coke's present and former employees, (including surnames, aliases, pre-and post-marital names, and the names of spouses, relatives and friends);

      b.     their physical addresses;

      c.     their email addresses;

      d.     their phone numbers (including unlisted phone numbers),

      e.     their financial account information (including banking, credit card, and other financial account numbers);

      f.     their income information;

      g.     their motor vehicle records; and

      h.     their employment information.

6.     It is believed and therefore averred that none of this sensitive and confidential employee PII was stored with encryption to secure it, to any degree, from unauthorized access and/or theft.

7.     Despite the fact that the theft took place over the course of many years, the Defendants deliberately delayed in notifying Plaintiff of the breach.  Had the Coke Defendants provided notice of the breach in accordance with the data breach notification laws of Pennsylvania and the other states in which the members of the Class reside, Plaintiff and the Class could have and would have taken steps to protect themselves.  Instead, for reasons unknown to Plaintiff and the Class, but unrelated to any requirements of law enforcement, the Defendants chose to wait on until the earliest date of January 24, 2014 to inform people, by mail, about the incident.

8.     Such deliberate and/or grossly negligent conduct, in the face of a preventable event had the Defendants taken appropriate steps to secure the PII of Plaintiff and the Class, is

3

actionable under the statutes and common law of Pennsylvania and the other States where Members of the Class reside.

9.     The case seeks to remedy the harmful effects of the breach of the privacy interests of Plaintiff and the Class, the failure to timely and reasonably notify them of such breach in accordance with the law, and the misleading and deceptive notification sent on January 24, 2014.

10.     In addition, Plaintiff and the Class seek restitution, disgorgement, and remediation for the actual damages sustained as a result of the unlawful taking, disclosure, and use of their PII.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiff and Class members are of diverse citizenship from the Defendants and over two-thirds of the Class resides outside of Pennsylvania.  According to Coke, more than 70,000 Class members nationwide had their PII accessed and stolen.  The aggregate amount in controversy exceeds $5,000,000.

12.     Further, this Court has jurisdiction under 18 U.S.C. § 2724 for violations of the Driver's Privacy Protection Act.

13.     This Court has personal jurisdiction over the parties because the Defendants conduct substantial business in this State, have had systematic and continuous contacts within this State, and have agents and representatives that can be found in this State.

14.     The Court has jurisdiction over the individual Defendants because they have had sufficient minimum contacts with and/or have purposefully availed themselves of the laws and markets of the Commonwealth of Pennsylvania through, among other things, their conspiratorial communications between themselves and with others (including telephonic and

4

electronic communications) and their receipt, marketing, sale and distribution of the PII of Pennsylvania residents.

15.     Under 28 U.S.C. § 1391, venue is proper in this District because Defendants engaged in substantial conduct relevant to the claims Plaintiff and the Class, and caused harm to members of the Class in this District.

## THE PARTIES

### PLAINTIFF

Plaintiff, Shane Enslin, is a resident of Pennsylvania domiciled in Albrightsville, Pennsylvania.  Mr. Enslin was employed as a service technician by Keystone Coca-Cola Bottling Company ("Keystone Coke") for 11 years.  As a condition of his employment by Keystone Coke, Mr. Enslin was required to provide motor vehicle records, including, but not limited to his driver's license and access to his driver's history.

16.     During his tenure as an employee of Keystone Coke, Mr. Enslin was entrusted with a company vehicle and keys to every vending machine owned or controlled by Keystone Coke.  While he was entrusted by Coke with access to its equipment and inventory, he entrusted Keystone Coke with his PII.  As discussed in greater detail below, Mr. Enslin had his PII, which was stored on or accessed from at least one of the 55 laptops stolen sometime between January of 2007 and December of 2013.  Despite the fact that the theft occurred on or before January 1, 2014, Mr. Enslin first received notice of the theft of his PII in a letter from Defendant, Coca-Cola Refreshments ("CCR"), dated February 23, 2014.  That letter informed him that his PII had been compromised.  A true and correct copy of the February 23, 2014 letter is attached hereto as Exhibit "A".  Since the subject data breach, Mr. Enslin has suffered from attempts to use, and actual use of, his credit and bank accounts by unknown third parties, referenced herein as Doe

Defendants.  These Doe Defendants have used the information stolen from Coke, CCE, CCR, and Keystone Coke (collectively the "Coke Defendants") to access, use, and alter Mr. Enslin's bank and credit accounts and other PII.  They have even obtained employment from United Parcel Service ("UPS") in his name.

17.     As discussed throughout this Complaint, Plaintiff has suffered direct injury and damages as a result of the data breach and compromise of his PII, the negligence of Defendants, and the acts and omissions and unlawful conduct of the Defendants set forth further herein. Plaintiff seeks declaratory and injunctive relief to stop the harm, damages to compensate him and others from such harm, as well as statutory damages, fees and costs.

## DEFENDANTS

### *The Coke Defendants*

18.     The following related entities named as defendants are referred to collectively as the as "Keystone Coca-Cola Bottling Company" or "Keystone Coke." Keystone Coke is a regional bottling company and distributor for Coca-Cola products within the Commonwealth of Pennsylvania.  As of December 31, 2007, the Keystone Coke entities were subsidiaries of Coca-Cola Enterprises, Inc.

   a.     Defendant, Keystone Coca-Cola Bottling Corporation, is a Pennsylvania Company with its principal place of business at 2500 Windy Ridge Parkway, 9th Floor, Atlanta, Georgia.  In addition, its registered office address is C/O Corporation Service Company, 2704 Commerce Drive, Harrisburg, Pennsylvania.

   b.     Defendant, Keystone Coca-Cola Bottling and Distribution Corporation, is Delaware corporation with its corporate headquarters at 2704 Commerce Drive, Harrisburg, Pennsylvania.

c.      Defendant, Keystone Coca-Cola Bottling Co., is a Pennsylvania Corporation with its principal place of business at 300 Oak Street, Pittston, Pennsylvania.

d.      Defendant, Keystone Coca-Cola Bottling Company, is a Pennsylvania Corporation with its principal place of business at 300 Oak Street, Pittston, Pennsylvania.

e.      Defendant, Keystone Coca-Cola Bottling Company, Inc., is a Delaware corporation with its principal place of business at 1007 Oak Street, Pittson, Pennsylvania.

19.     Defendant, Coca-Cola Enterprises, Inc. ("CCE"), is a Delaware corporation with its principal place of business at 2500 Windy Ridge Parkway, Atlanta, Georgia.  CCE is one of the largest Coca-Cola bottlers in the world.  Until 2010, CCE bottled and distributed Coca-Cola products in North America and Europe.  In 2010, Coke purchased CCE's North American bottling and distribution operation.  Presently, CCE bottles and distributes products in Belgium, Great Britain, France, Luxembourg, Monaco, the Netherlands, Norway, and Sweden.

20.     Defendant, Coca-Cola Refreshments USA, Inc. ("CCR"), is a subsidiary of the Coca-Cola Company with its principal place of business at 2500 Windy Ridge Parkway, Atlanta, Georgia.

21.     Defendant, the Coca-Cola Company ("Coke") is incorporated under the laws of Delaware with its principle place of business at 1 Coca Cola Plaza, Atlanta, Georgia. Collectively, Keystone Coke, CCE, CCR, and Coke comprise the "Coke Defendants."

22.     The Coke Defendants have maintained the formula for their signature drink, Coca-Cola Classic (*a.k.a.* Coca-Cola and Coke Original Formula), as a trade secret since the inception of the company in 1919, nearly 100 years ago.

23.     For fiscal year 2013, Coke, alone, reported operating revenue of $46.9 billion and assets of $90.1 billion, with a net income of $8.6 billion.

*The Criminal Defendants*

24.     Defendant, Thomas William Rogers, III, resides at 2300 Scotney Castle Lane, Powder Springs, Cobb County, Georgia.  This defendant stole approximately 55 laptops and other equipment from the Coke Defendants from approximately January of 2007 through November of 2013.  These laptops contained or otherwise allowed access to the aforementioned PII.  On or about June 13, 2014, a warrant issued for Mr. Rogers arrest.  On or about June 14, 2014, Mr. Rogers was arrested and charged by the Cobb County Police.  He stands charged with felony and misdemeanor theft by taking.

25.     Defendant Doe 1 resides at 147 Amity Place, Staten Island, New York.  This defendant acquired PII stolen from the Coke Defendants by Mr. Rogers and used the information to use, make purchases from, and alter information in the Plaintiff's accounts.

26.     Defendant Doe 2 resides at 82 Saint Marks Place, Apt. 2C, Staten Island, New York.  This defendant received items purchased with Plaintiff's accounts. Collectively, Mr. Rogers and Defendant Does 1 and 2 shall be referred to as the "Criminal Defendants".

27.     Defendants Doe's 1-50, ABC Corporations 1-50 and XYZ Partnerships and Associations (collectively "the Doe Defendants") are persons and entities who received the PII of Plaintiff and the Class.  The identities of the Doe Defendants are not yet known, but may be known in the future once the investigation of others is complete.

28.     All the foregoing Defendants are collectively referred to herein as "Defendants."

29.     The acts alleged in this Complaint to have been done by each of the Coke Defendants were authorized, ordered, done and/or ratified by their respective officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their respective business affairs.

30.     Various persons and/or firms not named as Defendants herein, have participated as co-conspirators in the violations alleged herein and have performed acts and made statements or omissions in furtherance thereof.

## FACTUAL BACKGROUND

31.     The Coke Defendants have successfully maintained the formula for Coca-Cola Classic (*a.k.a.* Coke, Coca-Cola, and Coke Original Formula) as a trade secret for nearly 100 years.  In spite of the diligence with which they guard this trade secret, the Coke Defendants had no security policy in effect which required their employees' personal information entrusted to their care to be encrypted.  The stolen laptops were not encrypted.  It is exponentially more difficult to extract data from computers that have been encrypted.

32.     As a condition of their employment, Plaintiff and the Class, current and former employees of the Coke Defendants, were required to provide the Coke Defendants with highly sensitive, private, and confidential personal, motor vehicle, and financial information.  This PII included, but was not limited to, their full legal names, addresses, Social Security numbers, driver's licenses, driver's records, and dates of birth.

33.     The Coke Defendants had a duty to protect the private, highly sensitive, confidential, personal, motor vehicle, and financial PII of the Plaintiff and the Members of the Class.

34.     The Coke Defendants failed to safeguard and prevent the theft of this PII from its computers or network.  The failed to take reasonable precautions to protect the PII of Plaintiff and the Class, and otherwise failed to act reasonably in fulfillment of their duty to current and former employees.

35.     The 2013 Identity Fraud Report released by Javelin Strategy & Research states

that in 2012 identity fraud incidents increased by more than one million victims and fraudsters stole nearly $21 billion. The study identified 12.6 million victims of identity fraud in the United States in the past year, which equates to 1 victim every 3 seconds. The report concluded that nearly 1 in 4 data breach letter recipients became a victim of identity fraud, with breaches involving Social Security numbers to be the most damaging.

36.     In 1992, the Organization for Economic Co-operation and Development ("OECD"), an international treaty organization to which the United States became a signatory in 1961, promulgated a framework for corporations and governments to secure their computers and networks.  This framework included the following broad principles:

a.      Accountability: The responsibilities and accountability of owners, providers and users of information systems and other parties concerned with the security of information systems should be explicit.

b.      Awareness: In order to foster confidence in information systems, owners, providers and users of information systems and other parties should readily be able, consistent with maintaining security, to gain appropriate knowledge of and be informed about the existence and general extent of measures, practices and procedures for the security of information systems.

c.      Ethics: Information systems and the security of information systems should be provided and used in such a manner that the rights and legitimate interests of others are respected.

d.      Multidisciplinary: Measures, practices and procedures for the security of information systems should take account of and address all relevant considerations and viewpoints, including technical, administrative, organizational, operational, commercial,

educational and legal.

      e.     Proportionality: Security levels, costs, measures, practices and procedures should be appropriate and proportionate to the value of and degree of reliance on the information systems and **to the severity, probability and extent of potential harm**, as the requirements for security vary depending upon the particular information systems.

      f.     Integration: Measures, practices and procedures for the security of information systems should be coordinated and integrated with each other and with other measures, practices and procedures of the organization so as to create a coherent system of security.

      g.     Timeliness: The security of information systems should be reassessed periodically, as information systems and the requirements for their security vary over time.

      h.     Democracy: The security of information systems should be compatible with the legitimate use and flow of data and information in a democratic society.

37.     Based on the OECD's framework, in 1996, the Department of Commerce's National Institute of Standards and Technology ("NIST") issued its own set of "Generally Accepted Principles and Practices for Securing Information Technology Systems".  As described by NIST, certain generally accepted practices include:

      a.     Assessment of Risk and Risk Mitigation, including:

            i.     The identification of appropriate safeguards as a primary function of computer security risk management.

            ii.     The effective implementation of safeguards.  Including the periodic assessment and improvement of safeguards and the reanalysis of risk.

11

b.       The use of mechanisms to detect unauthorized and/or illegal activity.

c.       Physical access controls to computer systems during and after business hours. With respect to mobile computing platforms, such as laptop computers, it is generally accepted that organizations should:

i.       Securely store laptop computers when they are not in use.

ii.       Encrypt data files on stored media, when cost-effective, as a precaution against disclosure of the information if a laptop computer is lost or stolen.

38.       In addition, to assist companies in protecting the security of sensitive personal and financial information, the Federal Trade Commission ("FTC") has issued a publication entitled "Protecting Personal Information: A Guide for Business" (the "FTC Report"). In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft.

39.       To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

a.       Keep inventory of all computers and laptops where the company stores sensitive data;

b.       Do not collect personal information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

c.       Use social security numbers only for required and lawful purposes and do not store these numbers unnecessarily, such as for an employee or customer identification number;

12

d.      Encrypt the personal information, particularly if the sensitive information is shipped to outside carriers or contractors. In addition, the business should keep an inventory of all the information it ships;

e.      Do not store sensitive computer data on any computer with an Internet connection or access unless it is essential for conducting the business;

f.      Control access to sensitive information by requiring that employees use "strong" passwords; and

g.      Implement information disposal practices that are reasonable and appropriate to prevent unauthorized access to personally identifying information.

40.     The Coke Defendants violated international and federal guidelines, which have been in place for decades.  In so doing, they did not meet data security industry standards for reasonable business practices, thereby failing to ensure adequate security of the Plaintiff's and the Class' personal, motor vehicle, and financial PII and by failing to retain this PII in a secure and safe manner.

41.     The Coke Defendants have a significant history of data breaches.   In 2009, during a failed takeover attempt by the China Huiyuan Juice Group, Chinese hackers breached the Coke Defendants' network.  It is unclear what, if any, changes in policy resulted from this attack.  At a minimum, this event should have served as a wakeup call to Coke to act reasonably in relation to the security of PII in their care, custody and control.  Unfortunately, it did not.

42.     The Coke Defendants have represented to Plaintiff and the Class that they understand the value of protecting PII.  On information and belief, the Coke Defendants privacy policy promises to "safeguard" their customers' data by:

a.      setting policies and procedures for carefully handling employees'

13

information,

      b.      establishing an information risk management program which is supervised by information technology management and reviewed by a cross-functional committee,

      c.      analyzing emerging risks,

      d.      preparing and presenting plans and strategies to senior management,

      e.      limiting access to their employees' sensitive information,

      f.      protecting against unauthorized access to employee data using data encryption, authentication, and virus detection technology,

      g.      requiring service providers who do business with the Coke Defendants to comply with privacy laws, and

      h.      adding company security practices.

43.      The Coke Defendants failed to follow their own standards for appropriate security measures, as outlined in their privacy policy and public disclosures, and thereby breached their duty of care and agreement with their employees, contractors and vendors, both present and former.

44.      Over nearly a six-year period from January of 2007 through November of 2013, approximately fifty-five (55) computers owned and operated by one or more of the Coke Defendants were stolen by one or more Coke employees.  These computers contained or had access to PII for at least 74,000 current and former employees of the Coke Defendants.

45.      On or about November 17, 2013, the Coke Defendants discovered the theft of their laptops and attempted to recover the stolen computers.  By December 10, 2013, the Coke Defendants had recovered approximately 55 computers.

46.    More than three (3) months later, on or about February 23, 2014, the Coke Defendants authored a letter to its former employee, Mr. Enslin, notifying him "about a *recent* incident discovered on December 10, 2013 that involved some of your personal information.  We *recently* discovered the theft of several laptops assigned to current [Coca-Cola Refreshments] and former [Coca-Cola Enterprises] users that included personal information."  *See* Exhibit "A" (emphasis added).

47.    In the letter, Mr. Enslin was offered one year of credit monitoring. This credit monitoring was provided by a company called Kroll.  Kroll is a "risk solutions" provider with offices in 55 countries and most major cities in the United States.  Kroll has offices at 1835 Market Street in Philadelphia, Pennsylvania.

48.    On information and belief, former employees of the Coke Defendants were offered a lesser degree of credit monitoring than current employees.  In other words, Mr. Enslin received a lesser degree of protection, even though he had demonstrable harm from the theft.

49.    Mr. Enslin stopped working for the Coke Defendants in 2007, seven years before the Coke Defendants discovered the data breach.  During his tenure, Mr. Enslin was employed by the Coke Defendants as a Service Technician assigned to the Poconos region, with his service area ranging from Wilkes-Barre to Allentown, Pennsylvania.  He was a trusted employee as evidenced by the fact that he was given a company-owned vehicle and the keys to all vending machines in the Poconos region.  Throughout the course of his employment, Mr. Enslin, intum, trusted the Coke Defendants with a variety of PII, including his Social Security Number, address, bank account information, credit card numbers, driver's license information and motor vehicle records.  It is believed and therefore averred that his PII was obtained by the Criminal Defendants by and through the theft of the laptop computers.

50.    Within a few months of the notification of the theft, the Criminal Defendants began to use the PII they obtained from the Coke Defendants to wreak havoc on the Plaintiff's life.

51.    Using the stolen information, the Criminal Defendants fraudulently purchased $958.44 of merchandise from Bloomingdale's and had it delivered to an address in Staten Island, New York.  They then used the monies in Plaintiff's bank accounts to pay off the bill.  Because the Criminal Defendants obtained access to Mr. Enslin's bank accounts as a direct result of the loss of his PII by the Coke Defendants, at his bank's prompting, Mr. Enslin was forced to close his long held bank accounts and open new accounts.  Due to the need to change accounts, Mr. Enslin incurred costs in the amount of $17 for checks for his new checking account.

52.    On or about April 8, 2014, the Criminal Defendants ordered $825.86 of merchandise from Fingerhut and had the merchandise shipped it to the same Staten Island address.  The Criminal Defendants then sought to change the addresses for all of the Plaintiff's accounts to addresses in Staten Island, New York.  Mr. Enslin and his wife had to expend hours of their personal time trying to reverse these address changes.

53.    Also on or about April 8, 2014, the Criminal Defendants took control of two (2) of Mr. Enslin's Capital One Credit Card accounts and his Best Buy Credit Account.  With these accounts, the Criminal Defendants attempted to pay the outstanding balances from Mr. Enslin's checking account.

54.    In addition, using the stolen PII of Mr. Enslin, the Criminal Defendants attempted to authorize the issuance of new credit cards to new users at various times.

55.    The Criminal Defendants attempted a similar scheme with Mr. Enslin's credit

16

account with Macy's Department Store ("Macy's").  The Criminal Defendants attempted to pay

off the Macy's account balance with funds from Mr. Enslin's checking account and then have a

new credit card issued to a new address controlled by them.

56.     On or about May 1, 2014, the Criminal Defendants changed the Plaintiff's address

on his credit account with Macy's to another one in their control.  When the Plaintiff tried to

undo the changes, Macy's demanded that he prove his identity.  To prove his identity, Macy's

required that Mr. Enslin fax a copy of his Driver's License and other proof of identity.  In effect,

the Criminal Defendants stole Plaintiff's identity and created an affirmative obligation for him to

try to prove who he is.  This has caused the Enslins hours of personal time expended in trying to

restore their identity and credit.

57.     Mr. Enslin was forced to close his Macy's account.  The Criminal Defendants

then attempted to reopen the account, forcing the Enslins to expend even more time and effort

keeping the account closed.

58.     On or about July 7, 2014, the Criminal Defendants used a newly re-issued,

password protected, credit card to purchase goods and/or services in the Republic of Ireland.

59.     In perhaps the most egregious event, on or about July 4, 2014, the Criminal

Defendants used Plaintiff's PII to obtain a job with UPS in the name of Shane Enslin.  With this

final act, Mr. Enslin's identity has been completely stolen and corrupted by the Criminal

Defendants, directly and proximately caused by the Coke Defendants acts and failures to act as

described herein.

60.     Mr. Enslin was finally contacted by the Chief Privacy Officer for the Coke

Defendants, Katherine Fithen.  She offered to upgrade Mr. Enslin to the "complete monitoring"

package provided to current employees, confirming what Mr. Enslin suspected—that former

employees were not treated as well as current employees by Coke.

61.     Nevertheless, due to the actions of the Criminal Defendants and the actions and failures to act by the Coke Defendants, Mr. Enslin's credit score has been negatively impacted and significantly decreased.  This has further harmed his credit, and his ability to obtain and maintain credit at reasonable rates.

62.     As a direct and proximate result of the Coke Defendants' actions and failures to act in maintaining reasonable and adequate security procedures to protect against the theft of Plaintiff's and the Class' personal, motor vehicle, driver's and financial information, Plaintiff and the Class have suffered actual harm and damages, including statutory damages, in that the personal and financial information of Plaintiff and the members of the Class have been misappropriated, accused and used improperly without consent, to obtain employment, to purchase goods and services, to expend bank funds and to do other acts described herein.  Because of this misappropriation, Plaintiff and the Class have suffered significant economic harm, in the form of lost monies, lost time, lost resources, reductions in their credit scores, and negative impact in their ability to obtain credit.

63.     The Defendants' failure to maintain reasonable and adequate security procedures to protect against the theft of Plaintiff's and the Class' personal, driver's, motor vehicle, and financial information has also put members of the Class at an increased and imminent risk of becoming victims of identity theft crimes, fraud and abuse in the future.  In the case of Mr. Enslin, that risk has been realized and remains outstanding to this day.

64.     Plaintiff and members of the Class have spent, or will need to spend, considerable time, money and effort to seek to protect themselves and restore their identities and credit as a result of the Defendants' conduct.

65.    Plaintiff and the Class are unable to obtain appropriate relief for the Defendants—despite repeated efforts to do so—and thus come before this Court for a reasonable remedy.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff seeks to bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated in Pennsylvania and other states as members of the following proposed Class:

a.    All persons, including current and former employees, contractors and vendors of the Coke Defendants in Pennsylvania and other states (including the District of Columbia and Puerto Rico), who, during the period beginning in at least January 2006 and continuing through the present had their PII accessed, disseminated and used by unauthorized users as a result of the theft of computers owned by Coke.  Excluded from the Class are Defendants, any entity in which a Defendant has a controlling interest, and their legal representatives, heirs, successors, and any governmental entities.

*Numerosity*

67.    The proposed Class is so numerous that joinder of all of its members is impractical.  In excess of 70,000 current and former employees, contractors and vendors of Coke suffered the loss of their PII due to the actions and failures of the Defendants to act.

*Common Questions of Law and Fact*

68.    There are multiple issues of law and fact in this case against the Coke Defendants that are common to the Class, including the following:

a.    Whether the Coke Defendants received and stored PII of Plaintiff and members of the Class;

b.      Whether the Coke Defendants had a duty to act reasonably in protecting the PII of Plaintiff and the Class in their care, custody and control;

c.      Whether the Coke Defendants failed to act reasonably in protecting the PII of Plaintiff and the Class in their care, custody and control;

d.      Whether the actions and/or failures to act of the Coke Defendants caused the PII of Plaintiff and the Class to be accessed, stolen and used without authorization;

e.      Whether the Coke Defendants failed to timely and reasonably notify Plaintiff and the Class of the theft of their PII in conformity with the laws of Pennsylvania and other states;

f.      Whether the Coke Defendants' notification contained false or misleading information and/or failed to inform Plaintiff and the Class of material information necessary to allow Plaintiff and the Class to protect themselves from further harm due to the theft of their PII;

g.      Whether the Coke Defendants have been unjustly enriched by having obtained the labor and other benefits from services of Plaintiff and the Class, and the saving of costs that would have been expended had they acted reasonably to protect the PII in their care, custody and control;

h.      Whether the Coke Defendants engaged in a conspiracy and/or concerted conduct in deceiving Plaintiff and the Class and concealing the truth about the theft of the laptops and the PII of Plaintiff and the Class;

i.      Whether the Coke Defendants breached their agreements, express and implied, with Plaintiff and the Class;

j.      Whether the Coke Defendants violated the duty of good faith and fair dealing in their agreements with Plaintiff and the Class;

k.      Whether the Coke Defendants complied with the security notification laws of

20

Pennsylvania and other States upon learning of the breach of the PII of Plaintiff and the Class;

l.      Whether the Coke Defendants violated the consumer protection laws of Pennsylvania and other states through their acts and omissions set forth in this Complaint;

m.      Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

n.      Whether Plaintiff and the members of the Class are entitled to damages, and, if so, the nature of such damages;

o.      Whether Plaintiff and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

69.      There are also multiple common issues of law and fact in this case against the Criminal Defendants, including the following:

a.      Whether the Criminal Defendants received and stored PII of Plaintiff and members of the Class;

b.      Whether the Criminal Defendants had a duty to act reasonably in protecting the PII of Plaintiff and the Class in their care, custody and control;

c.      Whether the Criminal Defendants failed to act reasonably in protecting the PII of Plaintiff and the Class in their care, custody and control;

d.      Whether the actions and/or failures to act of the Criminal Defendants caused the PII of Plaintiff and the Class to be accessed, stolen and used without authorization;

e.      Whether the Criminal Defendants failed to timely and reasonably notify Plaintiff and the Class of the theft of their PII in conformity with the laws of Pennsylvania and other states;

f.      Whether the Criminal Defendants' notification contained false or misleading information and/or failed to inform Plaintiff and the Class of material information necessary to allow Plaintiff and the Class to protect themselves from further harm due to the theft of their PII;

g.      Whether the Criminal Defendants have been unjustly enriched by having obtained the labor and other benefits from services of Plaintiff and the Class, and the saving of costs that would have been expended had they acted reasonably to protect the PII in their care, custody and control;

h.      Whether the Criminal Defendants engaged in a conspiracy and/or concerted conduct in deceiving Plaintiff and the Class and concealing the truth about the theft of the laptops and the PII of Plaintiff and the Class;

i.      Whether the Criminal Defendants breached their agreements, express and implied, with Plaintiff and the Class;

j.      Whether the Criminal Defendants violated the duty of good faith and fair dealing in their agreements with Plaintiff and the Class;

k.      Whether the Criminal Defendants complied with the security notification laws of Pennsylvania and other States upon learning of the breach of the PII of Plaintiff and the Class;

l.      Whether the Criminal Defendants violated the consumer protection laws of Pennsylvania and other states through their acts and omissions set forth in this Complaint;

m.      Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

n.      Whether Plaintiff and the members of the Class are entitled to damages, and, if so, the nature of such damages;

o.      Whether Plaintiff and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

### *Typicality*

70.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and the members of the Class sustained injuries as a result of the unlawful disclosure of their PII, which injuries were directly and proximately caused by the Defendants' acts and omissions.  As detailed herein, Plaintiff's harm consisted of the actual theft of his identity by the use of his PII by unauthorized persons, which caused his credit to be adversely affected, funds to be withdrawn from his bank accounts, and employment and credit status to be impacted negatively.

### *Adequacy of Representation*

71.     Plaintiff can and will fairly and adequately represent and protect the interests of the Class, and Plaintiff has no interests that conflict with or are antagonistic to the interests of the members of the Class.  Plaintiff has retained attorneys competent and experienced in class actions, including consumer fraud class actions involving theft of identify.  No conflict exists between Plaintiff and the members of the Class.

### *Superiority*

72.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

73.     The prosecution of separate actions by individual members of the plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.  These adjudications would establish incompatible standards of conduct for the

Defendants which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

74.     The Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

75.     Accordingly, class certification is appropriate under Rule 23(b)(1)(A), 23(b)(1)(B), 23 (b)(2) and 23(b)(3).

## COUNT I
## VIOLATIONS OF THE DRIVERS PRIVACY PROTECTION ACT

76.     Plaintiff and the Class hereby incorporate by reference thereto the preceding and following paragraphs hereof as if fully set forth herein.

77.     In order to be employed by the Coke Defendants, the Plaintiff and the Class were required to submit driver's records, including, but not limited to, their driver's licenses, and provide authorization to obtain driver's records, and/or driver's histories.  These records pertain to motor vehicle operator's permits, motor vehicle titles, motor vehicle registrations, or identification cards issued by the Commonwealth of Pennsylvania's Department of Transportation and/or the the departments of motor vehicles of the several States wherein the members of the Class reside.

78.     These records contained PII pertaining to the Plaintiff and the Class, including, but not limited to, their photographs, social security numbers, driver identification numbers, names, addresses, telephone numbers, and/or medical or disability information.

79.     On information and belief, the aforementioned PII and/or the motor vehicle records themselves were stored by the Coke Defendants, unencrypted and unsecured, on their

computer network, or individual computers within the possession and control of the Coke Defendants and their employees.

80.     Long after former employees, like Plaintiff, ended their employment relationship with the Coke Defendants, the Coke Defendants maintained this personal information without need and/or permission.  On information and belief, the Coke Defendants maintained this information knowing that they had no lawful reason and/or need to retain or use the PII of the Plaintiff and the Class.

81.     By knowingly retaining the information in an unencrypted and unsecured manner, the Coke Defendants disclosed this information to the Criminal Defendants, who obtained this information by accessing the unencrypted and unsecured computers of the Coke Defendants.

82.     The Criminal Defendants accessed the driver's records and/or the PII contained therein without any lawful purpose or privilege to do so.  Chiefly, the Criminal Defendants obtained the PII of the Plaintiff and the Class to steal their identities and commit unlawful acts.

83.     By retaining, accessing, disclosing, and/or using the PII of the Plaintiff and the Class the Coke Defendants and the Criminal Defendants violated 18 U.S.C. § 2724 of the Drivers Privacy Protection Act.

84.     As a result of the Defendants' violation of the Drivers Privacy Protection Act, the Plaintiff and the Class suffered ascertainable losses and damages in an amount to be determined at trial, but not less than liquidated damages of $2,500, as authorized by 18 U.S.C. § 2724(b)(1).

85.     As the Defendants' conduct is willful and constitutes a reckless disregard for the law, Plaintiff is entitled to punitive damages as provided by 18 U.S.C. 2724(b)(2).

86.     The Defendants should be enjoined from retaining, disclosing, and or using PII obtained from Plaintiff and the Class driver's records or other relief as this Court deems appropriate as authorized by 18 U.S.C. § 2724(b)(4).

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT II
## NEGLIGENCE

87.     Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

88.     The Coke Defendants owed a duty of care to Plaintiff and the Class to ensure that their PII was not used for improper purposes.

89.     The Coke Defendants breached their duty of care to Plaintiff and the Class to ensure that their PII was not used for improper purposes by failing to provide adequate protections to the PII and by allowing the PII to be accessed, in unencrypted format, by third parties.

90.     As a direct and proximate result of the Defendants' actions alleged above, the Plaintiff and the Class suffered damages.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT III
## NEGLIGENT MISREPRESENTATION/FRAUD
## THE COKE DEFENDANTS

91.     Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

92.     By engaging in the acts and omissions alleged in this Complaint, the Coke Defendants have made misrepresentations to and defrauded the Plaintiff and the Class.

93.     The Coke Defendants have made false statements and material misrepresentations to Plaintiff and the Class relating to the receipt, storage, maintenance and privacy of their PII, as well as the time, place and manner of the unauthorized access to and theft of their PII.  Their communications also involved material omission about the actual facts pertaining to the theft of the laptops which facts were necessary for Plaintiff and the Class to take timely and appropriate steps to protect themselves from the theft of their PII.

94.     The Defendants intended that Plaintiff and the Class would rely on their material misrepresentations and omissions to their detriment.  In particular, the Coke Defendants repeatedly made misrepresentations about the security of the PII they obtained from Plaintiff and the Class.  The Defendants also have made material misrepresentations and omissions to Plaintiff and the Class respecting, inter alia, when they learned of the unauthorized access to the PII.

95.     At least forty-four (44) States, the District of Columbia and Puerto Rico have enacted legislation requiring notification of security beaches involving personal information, including the following:

a.      Alaska, 2008 H.B. 65;

b.      Arizona, Ariz. Rev. Stat. § 44-7501 (2007 S.B. 1042, Chapter 23);

c.      Arkansas, Ark. Code § 4-110-101 *et seq*.;

d.      California, Cal. Civ. Code §§ 56.06, 1785.11.2, 1797.29, 1798.29, 1798.81.5, 1798.82, 1798.84;

e.      Colorado, Colo. Rev. Stat. § 6-1-716;

f.      Connecticut, Conn. Gen Stat. § 36a-701(b);

27

g.       Delaware, Del. Ann. Code Title 6, §§ 12B-101 *et seq*.;

h.       Florida, Fla. Stat. § 817.5681;

i.       Georgia, Ga. Code §§ 10-1-910, -912;

j.       Hawaii, Haw. Rev. Stat. § 487N-2;

k.       Idaho, Idaho Code §§ 28-51-104 to 28-51-107;

l.       Illinois, 815 ILCS 530/1 et seq.;

m.       Indiana, Ind. Code §§ 24-4.9 et seq., 4-1-11 *et seq*.;

n.       Iowa, 2008 S.F. 2308;

o.       Kansas, Kan. Stat. 50-7a01;

p.       Louisiana, La. Rev. Stat. Ann. § 51:3071 *et seq*.;

q.       Maine, Me. Rev. Stat. Ann. tit. 10 §§ 1347 *et seq*.;

r.       Maryland, Md. Code, Com. Law § 14-3501 *et seq*.;

s.       Massachusetts, 2007 H.B. 4144, Chapter 82;

t.       Michigan, Mich. Comp. Laws § 445.61 *et seq*.;

u.       Minnesota, Minn. Stat. §§ 325E.61, 325E.64;

v.       Montana, Mont. Code § 30-14-1701 *et seq*.;

w.       Nebraska, Neb. Rev. Stat. §§ 87-801 - 87-807;

x.       Nevada, Nev. Rev. Stat. 603A.101 *et seq*.;

y.       New Hampshire, N.H. Rev. Stat. §§ 359-C:19 *et seq*.;

z.       New Jersey, N.J. Stat. 56:8-163;

aa.       New York, N.Y. Gen. bus. Law § 899-aa;

bb.       North Carolina, N.C. Gen. Stat § 75-65;

cc.       North Dakota, N.D. Cent. Code § 51-30-01 *et seq*.;

28

dd. Ohio, Ohio Rev. Code §§ 1347.12, 1349.19, 1349.191, 1349.192;

ee. Oklahoma, Okla. Stat. § 74-3113.1 and 2008 H.B. 2245;

ff. Oregon, 2007 S.B. 583, Chapter 759;

gg. Pennsylvania, 73 Pa. Stat. § 2303 (2005 S.B. 712, Act 94);

hh. Rhode Island, R.I. Gen. Laws § 11-49.2-1 *et seq*.;

ii. South Carolina, 2008 S.B. 453, Act 190;

jj. Tennessee, Tenn. Code § 47-18-2107;

kk. Texas, Tex. Bus. & Comm. Code § 48.001 *et seq*.;

ll. Utah, Utah Code §§ 13-44-101, -102, -201, -202, -310;

mm. Vermont, Vt. Stat. tit. 9 § 2430 *et seq*.;

nn. Virginia, 2008 S.B. 307, chapter 566;

oo. Washington, Wash. Rev. Code § 19.255.010;

pp. West Virginia, 2008 S.B. 340, Chapter 37;

qq. Wisconsin, Wis. Stat. § 895.507;

rr. Wyoming, Wyo. Stat. § 40-12-501 *et seq.*;

ss. District of Columbia, D.C. Code § 28- 3851 *et seq*.;

tt. Puerto Rico, 2005 H.B. 1184, Law 111;

96. By the acts and omissions set forth herein, the Defendants have violated these laws.

97. As described in detail above, the Coke Defendants failed to comply with these statutory requisites by, *inter alia*, failing to disclose in the most expedient time possible and without unreasonable delay the fact of the breach of security concerning the PII of Plaintiff and the Class.

29

98.     It is believed and therefore averred that the legitimate needs of law enforcement did not prevent the Coke Defendants from providing expedient notice to Plaintiff and the Class. Specifically, it is believed and therefore averred that a law enforcement agency did not determine that the notification will impede a criminal or civil investigation and did not make a request that the notification be delayed.

99.     The Coke Defendants failed to provide reasonable security protection to the PII of Plaintiff and the Class to prevent a breach of security of the system.

100.     Defendants acted willfully, knowingly and/or recklessly with respect to its acts and omissions above.

101.     Plaintiff and the Class did in fact reasonably rely on the misrepresentations of the Coke Defendants to their detriment. They suffered injury and damages, as more fully set forth herein, due to the delays in conveying the truth.

102.     In addition, the Coke Defendants concealed and suppressed and/or omitted material facts as to their knowledge of the unauthorized access to the PII, and their subsequent actions ostensibly to protect Plaintiff and the Class from the unlawful disclosure and use of their PII.

103.     As a direct and proximate result of the Coke Defendants' misrepresentations, omissions, and concealment of the truth, Plaintiff and the Class were unaware of the true facts surrounding the theft of their PII and were not able to take timely action to protect themselves from the harmful effects of the unauthorized disclosure and use of their PII.

104.     As a direct and proximate result of the Defendants' misrepresentations and omissions, and the concealment and suppression of material facts by Defendants, Plaintiff and the Class have suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seek the relief set forth below.

## COUNT IV
## BREACH OF CONTRACT
## THE COKE DEFENDANTS

105.    Plaintiff hereby incorporates by reference thereto the averments of foregoing paragraphs hereof as if fully set forth herein and further allege as follows.

106.    Plaintiff and the members of the Class had employment agreements with the Coke Defendants.  These agreements involved a mutual exchange of consideration whereby the Coke Defendants entrusted Plaintiff and the Class with access to the vehicles and equipment for the sale of one of America's most secure brands, Coca-Cola, in exchange for the promise of employment, with salary, benefits, and secure PII.

107.    The failure of Defendants to keep secure from breach the PII of Plaintiff and the Class constitutes a material breach of the agreement between the Coke Defendants and the Class.

108.    As a direct and proximate result of the aforesaid breaches of the Defendants' agreements with Plaintiff and the Class, Plaintiff and the Class have been harmed.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT V
## BREACH OF IMPLIED CONTRACT

109.    Plaintiff hereby incorporates by reference thereto the averments of foregoing paragraphs hereof as if fully set forth herein and further allege as follows.

110.    Plaintiff and the Class were required by the Coke Defendants to provide PII as a condition of their employment.

111.     Implicit in the employment agreement between the Coke Defendants and  the Plaintiff and members of the Class was the obligation that both parties would maintain information confidentially and securely.  The Coke Defendants implicitly promised to keep the PII they collected from the Plaintiff and the Class secure and confidential. In addition, the Coke Defendants implicitly promised to retain this PII only for the term of their employment, and to either destroy it after the employment ended, or to take appropriate steps to ensure that it never was lost or stolen.

112.     Plaintiff and the Class faithfully worked for the Coke Defendants and steadfastly kept their employment obligations.  The Coke Defendants did not.

113.     As a direct and proximate result of the Coke Defendants' failures to secure, protect, and/or destroy the PII of the Plaintiff and the Class, the Plaintiff and the Class suffered, injury and damages as described herein.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT VI
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

114.     Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

115.     The general duty of good faith and fair dealing in the performance of a contract is found in the Restatement (Second) of Contracts, Section 205, which provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

116.     In Pennsylvania and other states, the duty of good faith is defined as honesty in fact in the conduct or transaction concerned.

32

117.    The duty to perform contractual obligations in good faith applies where the contract at issue is an employment contract.

118.    As part of the employment contract between Plaintiff and the Class and the Coke Defendants, there existed an implied covenant of good faith and fair dealing requiring the Coke Defendants to use their best efforts to protect the PII of Plaintiff and the Class.

119.    By failing to secure the PII of Plaintiff and the Class, the Coke Defendants breached the covenant of good faith and fair dealing.

120.    As part of the agreement between the Plaintiff, the Class and the Coke Defendants, there existed an implied covenant of good faith and fair dealing requiring the Coke Defendants to deal fairly with the Class with regard to timely and reasonable notification as to any breach of the PII belonging to Plaintiff and the Class.

121.    By failing to timely and reasonably notify Plaintiff and the Class of the breach of the security of their PII, the Defendants breached the covenant of good faith and fair dealing.

122.    Such breaches of the covenant of good faith and fair dealing by the Defendants were the direct and proximate result of injury and damages to Plaintiff and the Class.

123.    As a result of the breaches of the covenant of good faith and fair dealing by the Defendants, Plaintiff and the Class have been harmed.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT VII
## UNJUST ENRICHMENT
## ALL DEFENDANTS

124.    Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

33

125.    By engaging in the conduct described in this Complaint, the Defendants have knowingly obtained benefits from Plaintiff and the Class, namely their labor and the profits therefrom (in the case of the Coke Defendants), and actual monies and other benefits (in the case of the Criminal Defendants) under circumstances such that it would be inequitable and unjust for these Defendants to retain them.

126.    By engaging in the acts and failures to act described in this Complaint, the Coke Defendants have been knowingly enriched by the savings in costs that should have been reasonably expended to protect the PII of the Plaintiff and the Class. The Coke Defendants were on notice that theft of PII could happen by a prior occurrence, yet they failed to take reasonable steps to pay for the level of security required to have prevented the theft of their laptops.

127.    By engaging in the conduct described in this Complaint, the Criminal Defendants have knowingly obtained benefits from Plaintiff and the Class under circumstances such that it would be inequitable and unjust for these Defendants to retain them.  It is believed and therefore averred that the Criminal Defendants have collected either goods or services and otherwise used the PII belonging to Plaintiff and the Class for their benefit and to the detriment of Plaintiff and the Class.

128.    Thus, Defendants will be unjustly enriched if they are permitted to retain the benefits derived from the theft of Plaintiff's and the Class' PII.

129.    Plaintiff and each member of the Class are therefore entitled to an award of compensatory damages in an amount to be determined at trial, or the imposition of a constructive trust upon the monies derived by the Defendants by means of the above-described actions.

WHEREFORE, Plaintiff, on behalf of himself and each member of the Class, respectfully seeks the relief set forth below.

## COUNT VIII
## BAILMENT

130.    Plaintiff and the Class hereby incorporate by reference thereto the preceding and following paragraphs hereof as if fully set forth herein.

131.    Plaintiff and the Class entrusted the Coke Defendants with their PII for purposes of, and in exchange for, their employment with the expectation that the information would be stored or retained only for that purpose, used internally only for business purposes, and thereafter destroyed.

132.    Once the Plaintiff and Class members ended their employment relationships with the Coke Defendants, the Coke Defendants retained their PII without authorization, need, or lawful purpose.

133.    By failing to properly destroy or safeguard the PII of the Plaintiff and the Class, the Coke Defendants, did not deal with the PII according to the wishes of the Plaintiff and the Class and/or protect the PII until it could be reclaimed.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT IX
## CONSPIRACY/CONCERT OF ACTION

134.    Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

135.    As set forth more fully above, beginning at least as early as July 2006, the exact date being unknown to Plaintiff and the Class, and continuing thereafter until at least January 23, 2014, the Coke Defendants and their co-conspirators entered into an agreement and/or otherwise engaged in a continuing conspiracy to misrepresent and/or omit the truth, and defraud the

Plaintiff and the Class by causing PII of Plaintiff and the Class to be unlawfully accessed, downloaded and sold, and then hiding the true facts and delaying timely notification.

136.    Pursuant to the conspiracy alleged herein and in furtherance thereof, the Coke Defendants and their co-conspirators engaged in a wide range of activities, the purpose and effect of which was to misrepresent and conceal the truth from the Plaintiff and the Class, and to act or take substantial steps in furtherance of the conspiracy.  Those activities include the agreement to delay notification of the data breach to Plaintiff and the Class and an agreement to refuse to disclose the full details surrounding the data breach.

137.    The Coke Defendants performed the acts alleged herein in furtherance of the common plan or design for the conspiracy with knowledge of the injury and damage it would cause to Plaintiff and the Class and with intent to cause such injuries or with reckless disregard for the consequences.

138.    As a direct and proximate result of the Coke Defendants' conspiracy as alleged herein, Plaintiff and the Class have been injured and damaged, and the Defendants are jointly and severally liable for such injuries and damages.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully seeks the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class request the Court to enter the following relief:

a.    Certify this case as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and denominate Plaintiff as an adequate representative for his Class and his undersigned counsel as counsel for the Class;

b.     Declare unlawful the acts and practices alleged herein, and enjoin the Defendants from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiff and the Class for at least twenty-five (25) years, the provision of bank monitoring for Plaintiff the Class for at least twenty-five (25) years, the provision of credit restoration services for Plaintiff and the Class for at twenty-five (25) years, and the provision of identity theft insurance for Plaintiff and the Class for at least twenty-five (25) years;

c.     Enter judgment against all Defendants for the violations alleged herein;

d.     Award the actual damages incurred by Plaintiff and the members of the Class as a result of the wrongful acts complained of, along with pre-judgment and post-judgment interest at the maximum rate allowed by law;

e.     Award statutory damages set forth herein;

f.     Award of treble damages or multiple damages by operation of law;

g.     Award punitive damages;

h.     Award Plaintiff the costs of this action, including reasonable attorney's fees, and, where applicable, expert fees; and

i.     Award such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury of all issues so triable in this cause.

Respectfully submitted,

Donald E. Haviland, Jr., Esquire (PA 66610)
*haviland@havilandhughes.com*
**Haviland Hughes**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:     (215) 392-4400

*Attorneys for Plaintiff,*
*Shane Enslin, and the Class*

38